**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **ADRIAN BAILEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 1:21-00424** |
| | ) | |
| **M. RIFE,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On July 29, 2021 and August 11, 2021, Plaintiff filed his Complaint and Supplemental Complaint for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Document Nos. 3 and 8.) In his Complaint and Supplement, Plaintiff names the following as Defendants: (1) C. Maruka, Warden of FCI McDowell; (2) R. Brown, Assistant Warden of FCI McDowell; (3) E. Johnson, Assistant Warden at FCI McDowell; (4) K. Whinbush, Captain at FCI McDowell; (5) M. Slaughter, Correctional Officer at FCI McDowell; (6) M. Sawyers, SHU Recreational Officer/Correctional Officer at FCI McDowell; (7) K. Thorne, SIS/Correctional Officer at FCI McDowell; (8) C. Day, A2 Unit Manager at FCI McDowell; (9) A. Shrader, Trust Fund Supervisor at FCI McDowell; (10) T. Blankenship, Correctional Officer at FCI McDowell; (11) L. Martin, Correctional Officer at FCI McDowell; (12) J. Kirk, Lieutenant at FCI McDowell; (13) C. Connley, SHU Lieutenant at FCI McDowell; (14) M. Rife, CMC at FCI McDowell; (15) J. Jones, Counselor at FCI McDowell; (16) M. Lislie,

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

DHO Hearing Officer at FCI McDowell; (17) C. Oxford, Case Manager at FCI McDowell; (18) N. Justice, Correctional Officer at FCI McDowell; and (19) FCI McDowell. (Document No. 3, pp. 2 – 5 and Document No. 8.) Plaintiff alleges Defendants violated his constitutional rights. (Id.) First, Plaintiff claims he was denied of administrative remedy forms in violation of his constitutional rights. (Document No. 3, p. 7.) Specifically, Plaintiff alleges that A2 Counselor J. Jones, Unit Manager C. Day, Captain K. Whinbush, Lt. Connley, Associate Warden ("AW") R. Brown, AW E. Johnson, and Case Manager C. Oxford denied Plaintiff's request for administrative remedy forms. (Id.) Plaintiff states that it has been "close to a year" since he has had access to administrative remedy forms. (Id., p. 14.)

Second, Plaintiff claims that he was subjected to verbal threats and disrespect. (Document No. 3, p. 7 and 15 and Document No. 8.) In support, Plaintiff explains that he was surrounded by five to six officers (M. Salughter, L. Martin, T. Blankenship, N. Justice, and other unknown officers) in the law library on June 28, 2021. (Document No. 3, p. 7 and Document No. 8.) Plaintiff states that while he was in the law library, he requested printer paper from Officer Martin. (Id.) Plaintiff claims that Officer Martin inquired as to what Plaintiff needed to print, and Plaintiff responded, "legal research for you guys violating my civil rights." (Id.) Plaintiff alleges that approximately one hour later, five to six officers entered the law library and surrounded Plaintiff. (Id.) Plaintiff states that he said, "Damn what's up?" (Id.) Plaintiff claims that the officers responded that "they had a message for me from administration." (Id.) Plaintiff states that the officers clarified that the message was from "Boss Man Brown referring to Assistant Warden R. Brown and Mrs. Day referring to A Lower Unit Manager C. Day." (Document No. 3, pp. 7 – 8.) Plaintiff alleges that he was then threatened to stop asking for administrative remedy forms and that if Plaintiff continued, "they had a green light to beat [his] ass." (Id., p. 8.) Plaintiff

further states that the officers advised Plaintiff that he "did not want to be labeled as a 'snitch' in the BOP, and that they have seen snitches get killed, raped, and beaten." (Id.) Plaintiff alleges that these officers pointed out that there were no cameras in the law library, and "that if they had to pay me another visit, it would not be nice." (Id.) Plaintiff complains that on June 25, 2021, M. Sawyers told inmates that Plaintiff was a "snitch." (Id., p. 13.)

Third, Plaintiff complains that DHO M. Leslie violated his due process rights by directing the charging officer to rewrite Plaintiff's Incident Report multiple times. (Id., p. 9.) Plaintiff claims that DHO Leslie intentionally prolonged Plaintiff's stay in segregation by sending the Incident Report back for rewrites instead of "throwing out" the charge. (Id.) Plaintiff contends that the Incident Report was rewritten by K. Thorne three times, and the only difference in the Incident Reports were a few words. (Id.)

Fourth, Plaintiff complains that he was subjected to secondhand smoke. (Id., p. 10.) Plaintiff complains that from 2020 – 2021 officers at FCI McDowell would "smoke, chew, and vape products." (Id.) Plaintiff contends that this allowed "inmates to gain access to their used tobacco products" and inmates would smoke in housing units thereby subjecting inmates to secondhand smoke. (Id.)

Fifth, Plaintiff alleges that AW Brown, Trust Fund Supervisor A. Shrader, K. Whinbush, and C. Day refused to allow Plaintiff to send funds to his parents on February 10, 2021, and June 14, 2021. (Id., p. 10.) Plaintiff states that he discussed this issue with AW Brown and Trust Fund Supervisor Shrader, who said they would look into it. (Id., pp. 10 – 11.) Plaintiff alleges when he continued to ask questions about sending the funds and requesting administrative remedy forms, Defendants threatened to place Plaintiff in administrative segregation. (Id., p. 11.)

Sixth, Plaintiff alleges that Defendants placed Plaintiff in a "hard cell" in retaliation for

3

Plaintiff exercising his First Amendment rights. (<u>Id.</u>, pp. 12 – 13.) Plaintiff explains that on June 24, 2021, SHU Officer Sawyer informed Plaintiff he was being moved to a "hard cell." (<u>Id.</u>, p. 12.) Plaintiff states that when he inquired as to why he was being moved, Counselor J. Jones stated, "didn't you just ask me for a BP-8." (<u>Id.</u>) Plaintiff alleges that when he responded "yes," Counselor Jones responded, "Well, there you go." (<u>Id.</u>) Plaintiff alleges that in efforts to be removed from the "hard cell," he covered the window with his shirt. (<u>Id.</u>) Plaintiff alleges that Officer Hess then took Plaintiff to the DHO room where he met with Captain Whinbush. (<u>Id.</u>) Plaintiff alleges that he informed Captain Whinbush that he was being retaliated against for telling AW Brown that he would be seeking a civil action. (<u>Id.</u>, p. 13.) Plaintiff complains that Captain Whinbush responded, "maybe you should not be seeking civil action" and that such was not in Plaintiff's "best interest." (<u>Id.</u>) Plaintiff states that Officer Hess then returned Plaintiff to his "hard cell." (<u>Id.</u>) Plaintiff indicates that he had been the "hard cell" for approximately one month. (<u>Id.</u>) Plaintiff further alleges that officers did not give him any toothpaste, a toothbrush, or soap. (<u>Id.</u>) Finally, Plaintiff claims that the cell was "dirty" with spit, dust, blood, and human waste on the walls. (<u>Id.</u>)

Seventh, Plaintiff contends that he was only allowed "outside recreation" one time from June 18, 2021 until July 29, 2021. (<u>Id.</u>, p. 13.) Plaintiff complains that SHU Officer Sawyers would allow Plaintiff's cellmate to go to recreation, but not Plaintiff. (<u>Id.</u>) Plaintiff alleges that he complained to AW Brown, Captain Whinbush, Unit Manager Day, and SHU Lt. Connley, but no action was taken. (<u>Id.</u>, pp. 13 – 14.)

Eighth, Plaintiff asserts that he has only been allowed to go to the law library twice from June 17, 2021, until July 25, 2021. (<u>Id.</u>, p. 14.) Plaintiff claims this was done to "hinder [him] from seeking [his] First Amendment rights." (<u>Id.</u>) Plaintiff states that "most of the days the law

library is just empty, and officers are just being lazy." (Id.) Plaintiff alleges that he has reported the forgoing to AW Brown, SHU Lt. Connley, Captain Whinbush, and Unit Manger Day, but they only say "they will look into it and nothing happens." (Id.)

Ninth, Plaintiff claims that he contracted COVID in February 2021. (Id., p. 15.) Plaintiff alleges that he suffered from severe headaches, fatigue, sinus problems, dizziness, vomiting, diarrhea, fever, and loss of taste. (Id.) Plaintiff complains that he has ongoing issues. (Id.) Plaintiff alleges that his PA is providing inadequate medical care for his "ongoing issues," because she merely states that "it would go away." (Id.) Specifically, Plaintiff alleges that he suffers from long-term "sinus problems," "fogginess in my head," and headaches. (Id.) Plaintiff states he "was never given treatments of any kind." (Id.) Plaintiff alleges that when he puts in "sick calls" regarding the above issues, no one comes to see him. (Id.) Plaintiff, however, acknowledges that if he places a "sick call about something else, they come and see me." (Id.) Plaintiff alleges that he has notified AW Brown and Unit Manager Day about the foregoing, but no action has been taken. (Id., p. 16.) Plaintiff further alleges that Warden Maruka and Captain Whinbush are responsible for the safety of inmates. (Id.)

Tenth, Plaintiff alleges that disciplinary proceedings against him violated his due process rights. (Id., pp. 17 -18.) Plaintiff complains that he was "found guilty of the Incident Report even though the Incident Report was served on [him] by Lt. Kirk 2 hours past the 24-hour deadline." (Id.) Plaintiff further claims that his "UDC hearing was 72 hours past the deadline because correctional staff had 72 hours to UDC [him] for an Incident Report from the time the Incident Report was served on [him]." (Id.) Plaintiff alleges that asserted the above procedural violations during his hearing, but he was still found guilty of the charge contained in the Incident Report. (Id.) As a sanction, Plaintiff states that he lost 60 days of commissary and 30 days of phone

privileges. (Id., p. 18.) Plaintiff requests monetary and injunctive relief. (Id., p. 21.)

As Exhibits, Plaintiff attaches the following: (1) A copy of the Incident Report dated July 22, 2021, charging Plaintiff with "Fighting with Another Person" in violation of Prohibited Act Code 201 (Document No. 3-1, p. 1.); (2) A copy of the Incident Report dated July 2, 2021, charging Plaintiff with "Fighting with Another Person" in violation of Prohibited Act Code 201 (Id., p. 2.); (3) A copy of the Incident Report dated June 17, 2021, charging Plaintiff with "Fighting with Another Person" in violation of Prohibited Act Code 201 (Id., p. 3.); (4) A copy of the Incident Report dated June 24, 2021, charging Plaintiff with "Fighting with Another Person" in violation of Prohibited Act Code 201 (Id., p. 4.); (5) A copy of Plaintiff's "Request to Staff" dated May 28, 2021 and June 10, 2021, concerning his prisoner funds (Id., pp. 5, 7, 10.); (6) A copy of Plaintiff's "Request to Staff" dated June 28, 2021, regarding a sick call request (Id., p. 6.); and (7) A copy of Plaintiff's "Request to Staff" dated May 20, 2021 and June 2, 2021, concerning Plaintiff's request to send money from his prisoner account to his mother (Id., pp. 8 - 9.).

## **STANDARD**

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on

an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

## DISCUSSION

**1.    FCI McDowell is an Improper Party:**

A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reingold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999). To the extent Plaintiff has named the FCI McDowell as a defendant in his Bivens action, FCI McDowell should be dismissed. Accordingly, the undersigned respectfully recommends that Plaintiff's claims against FCI McDowell be dismissed.

**2.    Administrative Remedy Process:**

In his Complaint, Plaintiff alleges that Defendants Jones, Day, Whinbush, Connley,

8

Brown, Johnson, and Oxford violated his constitutional rights by rendering BOP's administrative remedy process unavailable. (Document No. 3, p. 7.) Plaintiff complains that it has been "close to a year" since he had access to administrative remedy forms. (Id., p. 14.) Federal inmates, however, have no constitutional right to participate in the BOP's administrative grievance proceedings. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir.), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1994); also see Booker v. South Carolina Dept. of Corrections, 855 F.3d 533 (4th Cir. 2017)("*Adams* establishes a clear rule: inmates have no constitutional entitlement or due process interest in access to a grievance procedure."); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)("[T]he federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure. When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.") A BOP employee's refusal to respond to an inmate's administrative complaint, or conduct that otherwise prevents an inmate from pursuing such complaints through the administrative remedy process, making the process unavailable, is not actionable under Bivens. Rather, the legal consequence of conduct which makes the administrative remedy process unavailable to inmates is that the door to federal Court is open to proceedings on the merits of their claims without requiring their exhaustion of administrative remedies. Accordingly, the undersigned finds that Plaintiff's claim that Defendants Jones, Day, Whinbush, Connley, Brown, Johnson, and Oxford violated his constitutional rights by rendering the BOP's Administrative Remedy process unavailable should be dismissed.

**3.**    **Eighth Amendment:**

The undersigned views Plaintiff's Complaint as setting forth a claim under the Eighth

Amendment. As a general matter, punishments prohibited under the Eighth Amendment include those that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321,

2323 - 2325, 115 L.Ed.2d 271 (1991); also see King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993))("[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." Odom v. South Caroline Dept. of Corrections, 349 F.3d 765, 770 (4th Cir. 2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In Strickler, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate indifference" to his health and safety by defendants. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

11

Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware of the excessive risk to Plaintiff's health or safety and each Defendant disregarded that risk.

    **(a)**    ***Verbal Threats.***

Plaintiff appears to contend that Defendants Salughter, Martin, Blankenship, and Justice violated his constitutional rights by verbally threating him. (Document No. 3, p. 7 and 15 and Document No. 8.) Specifically, Plaintiff alleges that Defendants Salughter, Martin, Blankenship, and Justice surrounding him while he was in the law library on June 28, 2021. (Id.) Plaintiff alleges that he was then threatened to stop asking for administrative remedy forms and that if Plaintiff continued, "they had a green light to beat [his] ass." (Id., p. 8.) Plaintiff further states that the officers advised Plaintiff that he "did not want to be labeled as a 'snitch' in the BOP, and that they have seen snitches get killed, raped, and beaten." (Id.) Plaintiff complains that on June 25, 2021, M. Sawyers told inmates that Plaintiff was a "snitch." (Id., p. 13.) Assuming Plaintiff's allegations as true, Plaintiff has failed to state a constitutional claim. In order to establish a claim of failure to protect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials acted with "'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834, 114 S.Ct. at 1977. First, Plaintiff fails to allege that he was incarcerated under conditions imposing a substantial risk of serious harm. Plaintiff does not claim that he was assaulted or that his life was threatened by other inmates because of Defendants' statements referring to Plaintiff as a snitch. Plaintiff conclusory statement that his life was placed in jeopardy is insufficient. Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege that each Defendant was consciousness of the risk of harm to

him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege that each Defendant knew of and disregarded an excessive risk to his health or safety. Furthermore, Plaintiff does not indicate that he suffered any serious injury as a result of Defendants' verbal threats or harassment. See Henslee v. Lewis, 153 Fed. Appx. 178 (4th Cir. 2005)(Inmate did not state a cognizable claim under Section 1983 when he alleged that jail employee incited other inmates to attack him, but did not contend that any such attack occurred.); Langston v. Fleming, 38 F.3d 1213 (4th Cir. 1994)(unpublished opinion)(Prisoner failed to state a claim where he merely alleged that guards endangered his life by informing other inmates that he was charged with rape). Finally, the verbal threat or harassment of an inmate by prison guards, without more, is insufficient to state a constitutional deprivation. Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987); also see Lindsey v. O'Connor, 2009 WL 1316087, at * 1 (3rd Cir. (Pa.))(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); Purcell v. Coughlin, 790 F.2d 263, 265 (2nd Cir. 1986)(stating that name-calling does not rise to the level of a constitutional violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation). Although this Court does not condone the alleged conduct by the above Defendants, the undersigned finds that such fails to state a cognizable claim. Based on the foregoing, the undersigned recommends that the District Court find that Plaintiff's allegations of verbal threats and harassment by Defendants Salughter, Martin, Blankenship, Justice, and Sawyers fails to state a cognizable claim under the Eighth Amendment for which relief can be granted.

      **(b)**     ***Conditions of Confinement.***

      Plaintiff contends that the conditions of his confinement was cruel and unusual based on

his one-month placement in a "hard cell." (Document No. 3, pp. 12 – 13.) Plaintiff asserts that he was denied toothpaste, a toothbrush, and soap. (Id.) Plaintiff further states that his "hard cell" was dirty with spit, dust, blood, and human waste on the walls. (Id.) As stated above, prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish, 573 F.2d at 125. In Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991), the Supreme Court held that "some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." First, Plaintiff's complaint of being confined in a dirty "hard" cell is insufficient to state a constitutional violation. See also Hadley v. Peters, 70 F.3d 117 (7th Cir. 1995), cert. denied, 517 U.S. 1111, 116 S.Ct. 1333, 134 L.Ed.2d 484 (1996)("Prisons are not required to provide, and prisoner cannot expect, the services of a good hotel."). To the extent Plaintiff complains that he was denied soap, toothpaste, and a toothbrush for approximately one month, such is insufficient to state a claim. It is well recognized that the short-term denial of clean clothing and hygiene supplies does not rise to the level of an Eighth Amendment violation. See Beverati, 120 F.3d at 504-05, n. 5(finding a six-month deprivation of clean clothing, linen, or bedding did not violate the Eighth Amendment); Johnson v. Fields, 2017 WL 5505991, * 10 (W.D.N.C. Nov. 16, 2017)("Plaintiff's claim that he was denied a shower and clean clothes for twelve days is insufficient as a matter of law to maintain an Eighth Amendment claim."); DeLoach v. South Carolina Dept. of Corr., 2009 WL 1651452, * 3 – 4 (D.S.C. June 11, 2009), aff'd., 355 Fed.Appx. 681 (4th Cir. 2009)(denial of a clean jumpsuit and hygiene packet for a thirty day period did not constitute a denial of a 'basic need'); Walker v. Dart, 2010 WL

14

669448, * 4 (N.D.Ill. Feb. 19, 2010)("Being denied clean clothes for two weeks, though unpleasant, is not a deprivation serious enough to support an Eighth Amendment claim)(collecting cases); Williams v. Anderson, 2006 WL 709209, * 13 (S.D.W.Va. March 16, 2006)(finding segregated inmate's inability to "exercise, keep personal hygiene items, change clothes or shower, take part in academic and religious programs or telephone family members" did not violate the Eighth Amendment).

Next, the Court considers Plaintiff's claim that the "hard cell" he was placed in for approximately one month had human waste, spit, and blood on the walls. "[A] prisoner's exposure to human waste may give rise to an Eighth Amendment violation. Williams v. Collier, 357 Fed.Appx. 532, 535 (4th Cir. 2009)(citing DeSpain v. Uphoff, 264 F.3d 965, 974-75 (10th Cir. 2001)). Exposure to human waste evokes both health and standards of dignity concerns embodied in the Eighth Amendment. McCord v. Maggio, 927 F.2d 844, 848 (5th Cir. 1991); Jones v. Solomon, 2018 WL 6247265, * 11 (W.D.N.C. Nov. 29, 2018)("Deprivation of basic sanitary conditions such as exposure to human waste without the ability to clean oneself can constitute an Eighth Amendment violation.") "[T]he mere smell or presence of human waste is not sufficiently serious to constitute a violation of the Eighth Amendment." Salmons v. Western Regional Jail, 2019 WL 5616916, * 6 (S.D.W.Va. Oct. 30, 2019)(J. Chambers). Although the sight and odor of human waste is distasteful, it does not rise to the level of cruel and unusual punishment. Canterbury v. Western Regional Jail, 2019 WL 6545328, * 12 (S.D.W.Va. Nov. 7, 2019), report and recommendation adopted by, 2019 WL 6598349 (S.D.W.Va. Dec. 4, 2019)(finding no constitutional violation where the plaintiff did not come into direct physical contact with human waste for an extended period of time); Harris v. FNU Connolly, 2016 WL 676468, * 5 (W.D.N.C. Feb. 18, 2016), aff'd, 667 Fed.Appx. 408 (4th Cir. 2016)(concluding that

15

unsanitary cell conditions, including the presence of feces, urine, and vomit was less than ideal, but short term sanitation problems do not amount to constitutional violations); DePaola v. Ray, 2013 WL 4451236, * 10 (W.D.Va. July 22, 2013)(finding no violation of a basic human need or a sufficiently serious injury where a plaintiff allegedly "suffered from nausea [and psychological trauma] due to the smell of other inmates smearing their feces/urine while in the B-3 pod"). When determining whether exposure to human waste is cruel and unusual, such depends on both the duration and the severity of the exposure. See Willey v. Kirkpatrick, 801 F.3d 51, 68 (2015). In Willey, the Second Circuit set forth two examples:

> An exposure to human waste that lasts merely ten minutes, but that exposure takes the form of working in a well while facing "a shower of human excrement without protective clothing and equipment," a jury may find an Eighth Amendment violation. *See Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990). . . . Likewise, a less severe exposure may be constitutionally permissible if rectified in short order but may become cruel and unusual with the prolonged passage of time. *See McCord*, 927 F.2d at 846-47(holding that occasional sewage backup onto cell floor on which inmate slept over two-year period, amount other conditions, violated the Eighth Amendment).

Id.; also see Hutto v. Finney, 437 U.S. 678, 686, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)(finding that confinement in a "filthy, overcrowded cell and a diet of [1,000 calories per day] might be tolerable for a few days and intolerably cruel for weeks or months); Williams v. O'Brien, 2014 WL 2864897, * 10 – 11 (N.D.W.Va. June 24, 2014)(an inmate's placement in a cell without running water, no sink, no toilet, half a mattress, being provided a bag for his bathroom needs, and no one removing the used bag for two days failed to state an Eighth Amendment claim where the inmate's exposure to such conditions was limited to two and a half days and inmate failed to allege "any harm more serious than temporary discomfort"). In Shakka v. Smith, the Fourth Circuit determined plaintiff failed to establish an Eighth Amendment violation where Plaintiff was provided with water and cleaning material but denied a shower for three days after

human waste was thrown onto plaintiff and his surroundings. <u>Shakka v. Smith</u>, 71 F.3d 162, 167-68 (4th Cir. 1995). In the instant case, Plaintiff does not allege that he came into direct physical contact with human waste or body fluids. Plaintiff merely alleges that there was human waste and body fluids on the wall of the cell that he was held in for approximately a month. As explained above, the mere smell or presence of human waste or body fluids does not rise to the level of a constitutional violation. Based on the foregoing, the undersigned finds that Plaintiff's above alleges fail to state a claim under the Eighth Amendment for which relief can be granted.

       **(c)**     ***Deliberate Indifference Regarding Medical Care:***

In his Complaint, Plaintiff contends that a "PA" and medical staff acted with deliberate indifference in violation of the Eighth Amendment by failing to provide Plaintiff with appropriate medical treatment after he contracted COVID in February 2021. (Document No. 3, p. 15.) Plaintiff alleges that he suffered from severe headaches, fatigue, sinus problems, dizziness, vomiting, diarrhea, fever, and loss of taste. (<u>Id.</u>) Plaintiff asserts that he "was never given treatments of any kind." (<u>Id.</u>) Plaintiff further complains that he has "ongoing issues" of "fogginess in my head," headaches, and "sinus problems." (<u>Id.</u>) Plaintiff alleges that his PA is providing inadequate medical care for his "ongoing issues" because she merely states that "it would go away." (<u>Id.</u>) Plaintiff states that when he submits a "sick calls" regarding the above issues, no one comes to see him. (<u>Id.</u>) Liberally construing Plaintiff's Complaint, the undersigned concludes that Plaintiff has alleged a facially plausible claim under the Eighth Amendment. Plaintiff, however, has not identified the "PA" or the medical staff that allegedly denied him necessary medical care. Plaintiff is **NOTIFIED** that it is Plaintiff's responsibility to ascertain the identities and addresses of those individuals whom Plaintiff believes caused him injury. As explained above, a Court may not dismiss a *pro se* Complaint with prejudice where it can be

remedied by an amendment. Accordingly, the undersigned respectfully recommends that Plaintiff be permitted to amend his Complaint concerning his deliberate indifference claim to identify the individuals that allegedly denied him necessary medical care.

(d)    ***Exposure to tobacco products.***

Plaintiff contends that the conditions of his confinement were cruel and unusual based upon his exposure to tobacco products. (Document No. 3, p. 10.) Specifically, Plaintiff complains that from 2020 – 2021 officers at FCI McDowell would "smoke, chew, and vape products." (Id.) Plaintiff contends that this allowed "inmates to gain access to their used tobacco products" and inmates smoked in housing units thereby subjecting other inmates to secondhand smoke. (Id.) In Helling v. McKinney, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), the Supreme Court held that an inmate "states a cause of action under the Eighth Amendment by alleging that ... [the prison officials] have, with deliberate indifference, exposed him to levels of ... [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his future health." Therefore, a plaintiff must satisfy a two-part inquiry that involves an objective and subjective component.

First, an inmate must prove objectively that he has been "exposed to unreasonably high levels" of environmental tobacco smoke. Id. at 35 - 36, 113 S.Ct. at 2475. In considering the first factor, the Court must inquire into the seriousness of the potential harm and the likelihood that environmental tobacco smoke will actually cause such harm. Id. The evaluation "requires more than statistical inquiring into the seriousness of the potential harm." Id. The Court must assess "whether society considers the risk . . . to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Id. Relevant facts include whether the

inmate remains housed in the environment, and whether the facility has enacted a formal smoking policy. Id.

Second, the inmate must show subjectively that prison authorities demonstrated a "deliberate indifference" to a risk of serious damage to his future health. Id. To establish the subjective component of deliberate indifference, an inmate must allege and prove each defendant's consciousness of the risk of harm to the inmate. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, an inmate must establish that the prison official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. The adoption of a smoking policy "will bear heavily on the inquiry into deliberate indifference." Id. Furthermore, the mere imperfect enforcement of a non-smoking policy does not rise to the level of deliberate indifference. Scott v. District of Columbia, 139 F.3d 940, 944 (D.C.Cir. 1998)(stating that "it is hard to see how imperfect enforcement of a nonsmoking policy can, alone, satisfy Hellings' subjective element").

Liberally construing Plaintiff's Complaint and assuming all facts as true, Plaintiff's allegations do not establish an Eighth Amendment violation. Plaintiff alleges that correctional officers either chewed or smoked tobacco outside the units from 2020 to 2021. Plaintiff concludes that Defendants have violated his constitutional rights because Defendants are responsible for Plaintiff's safety and health. The undersigned notes that Plaintiff fails to allege how correctional officers' chewing of tobacco has jeopardized his health or safety. As to secondhand smoke, Plaintiff's allegations do not establish that he has been "exposed to unreasonably high levels" of secondhand tobacco smoke. Although Plaintiff alleges he has been

19

exposed to secondhand smoke, Plaintiff's exposure to Defendants' secondhand smoke was limited to outside the units and when traveling pass certain routes. There is no allegation or indication that Plaintiff's limited exposure to secondhand smoke poses an unreasonable risk of serious damage to Plaintiff's future health. As to secondhand smoke from other inmates, there are absolutely no factual allegations indicating that Defendants knew Plaintiff was being exposed to secondhand smoke within the housing units that posed an unreasonable risk of serious damage and Defendants disregarded such. Accordingly, the undersigned recommends that Plaintiff's Eighth Amendment claim based upon exposure to tobacco products and secondhand smoke be dismissed.

**4.    Due Process:**

Next, Plaintiff alleges that Defendants violated his due process rights. (Document No. 3.) Plaintiff first asserts that "FCI McDowell refuses to let [him] send money off [his] account." (Id., p. 10.) Plaintiff contends that his due process rights are being violated because he cannot send money to his mother and father, but he can spend money at the commissary or buy TRULINCS on the computer. (Id., pp. 10 – 11.) Second, Plaintiff argues that the disciplinary proceedings against him violated his due process rights. (Id., pp. 17 -18.) Plaintiff contends that DHO Leslie violated his due process rights by directing that the Incident Report be rewritten multiple times. (Id., p. 9.) Plaintiff claims that DHO Leslie intentionally prolonged Plaintiff's stay in segregation by sending the Incident Report back for rewrites instead if "throwing out" the charge. (Id.) Plaintiff further complains that he was "found guilty of the Incident Report even though the Incident Report was served on [him] by Lt. Kirk 2 hours past the 24-hour deadline." (Id.) Plaintiff also claims that his "UDC hearing was 72 hours past the deadline because correctional

staff had 72 hours to UDC [him] for an Incident Report from the time the Incident Report was served on [him]." (Id.) Plaintiff alleges that he asserted the above procedural violations during his hearing, but he was still found guilty of the charge contained in the Incident Report. (Id.) As a sanction, Plaintiff states that he lost 60 days of commissary and 30 days of phone privileges. (Id., p. 18.) Finally, Plaintiff complains that his access to outside recreation was limited during his placement in administrative segregation. (Id., p. 13.) Plaintiff explains that he was allowed outside recreation only one time from June 18, 2021 until July 29, 2021. (Id.)

Although the Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law," the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for their period of incarceration. See U.S. Const. Amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Gaston v. Taylor, 946 F.2d at 343 (emphasis added).

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an

inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, in order to establish that a deprivation of his due process rights has occurred, plaintiff must first identify a liberty interest which is protected by the Due Process Clause of the United States Constitution. See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)(holding that an inmate cannot be deprived of a protected liberty interest in good-time credits without procedural due process). Second, the inmate must establish that the denial of the liberty interest "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Martin v. Duff, 2017 WL 2366997, * 9 (4th Cir. June 1, 2017)(citing Sandin, 515 U.S. at 484, 115 S.Ct. at 2300). "An inmate who fails to satisfy these two requirements '*cannot* invoke the procedural protections of the Due Process Clause.'" Id. (citing Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976))(emphasis in original). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. Sandin, 515 U.S. at 484, 115 S.Ct. at 2300.

(a)    *BOP's failure to follow policies and procedures.*

When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is implicated, and minimal

procedural guarantees are recognized. Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). The Supreme Court stated what procedure is required at a minimum in Wolff, supra. An inmate subject to administrative disciplinary sanctions impacting the duration of his sentence is entitled (1) to receive advance notice of charges no less than 24 hours before the disciplinary hearing, (2) to present evidence and witnesses in his defense as long as it does not jeopardize institutional safety or correctional goals, and (3) to receive a written statement of the evidence relied upon and the reasons for the disciplinary action. Id., 418 U.S. at 563 - 569, 94 S.Ct. at 2978 - 2981. In the instant case, however, there is no allegation or indication that Plaintiff's disciplinary sanction impacted the duration of his sentence. Additionally, the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation. See Myers v. Klevenhager, 97 F.3d 91, 94 (5th Cir 1996); Giovanni v. Lynn, 48 F.3d 908, 913 (5th Cir. 1995), cert. denied, 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995). The undersigned notes additionally that the Supreme Court has indicated that prison regulations are not designed to confer rights on or benefits to inmates. Rather, they are primarily designed to guide correctional officials in the administration of prisons. Sandin v. Conner, 515 U.S. 472, 481- 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Accordingly, Plaintiff's claims based upon Defendants' alleged failure to comply with their own policies or procedures is insufficient to state a claim.

    **(b)**    ***No Liberty Interest in Prison Privileges.***

To the extent Plaintiff alleges a liberty interest in retaining his "outside recreation," commissary, and telephone privileges, the undersigned finds that Plaintiff's claim is without merit. The denial of privileges and confinement in segregation are matters clearly contemplated

by Plaintiff's original sentence. See Gaston, 946 F.2d at 343 (To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"); Hatch v. District of Columbia, 184 F.3d. 846, 855 (D.C. Cir. 1999)(stating that "the transfer of an inmate to less amenable and more restrictive quarter for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); and Gholson v. Murry, 953 F. Supp. 709, 716 (E.D.Va. 1997)(finding that the denial of work opportunities and certain education programs did not impose an atypical and significant hardship on inmates placed in segregation in relation to the ordinary incidents of prison life). Furthermore, it is well established that an inmate has no absolute right to prison visitation or telephone privileges. See Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 109, S.Ct. 1904, 104 L.Ed.2d 506 (1989)("The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence and therefore is not independently protected by the Due Process Clause."); Smith v. Roper, 12 Fed.Appx. 393, 396 (7th Cir. 2001), cert. denied, 534 U.S. 1093, 122 S.Ct. 839, 151 L.Ed.2d 718 (2002)("In light of Sandin, the deprivations that Smith suffered as a result of the disciplinary proceedings - namely, 22 days in segregation, a six-month loss of privileges associated with his demotion to C class, and six days without phone privileges - do not implicate a liberty interest."); Freitas v. Ault, 109 F.3d 1335, 1337-38 (8th Cir. 1997)(finding that an involuntary transfer to a higher-security facility and loss of work and phone privileges did not constitute atypical and significant hardship); Alkebulanyahh v. Ozmint, 2009 WL 2043912, *9 (D.S.C. July 13, 2009), aff'd, 358 Fed.Appx. 431 (4th Cir. 2009)("[P]rison visitation does not implicate the standard set forth in

Sandin."); Principio v. McGinnis, 2007 WL 2344872, * 2 (W.D.N.Y. Aug. 15, 2007)(finding that "60 days of keeplock with loss of telephone, packages, recreation and conjugal visits," was not an atypical or significant hardship); Richardson v. Johnson, 2001 WL 360843, * 1 n. 1 (N.D.Tex. April 5, 2001)(finding that phone-privilege restrictions, like commissary and recreation restrictions, do not impose a significant or atypical hardship on the inmate in relation to the ordinary incidents of prison life); James v. Odom, 2000 WL 1136563 *5 (S.D.Ala. May 30, 2000)(finding a 45-day restriction on inmate's "store, phone, and visiting privileges" did not constituted an atypical or significant hardship); Ozolina v. Durant, 1996 WL 82481, * 1 (E.D.Pa. Feb. 26, 1996)(Under Sandin, "there is no right to visitation protected by the Due Process Clause."); and White v. Keller, 438 F.Supp. 110, 114 (D.C.Md. 1997), aff'd, 588 F.2d 913 (4th Cir. 1978)("[T]here is no constitutional right to prison visitation, either for prisoners or visitors"). Accordingly, to the extent that Plaintiff is claiming his liberty interest in retaining "outside recreation," commissary, and telephone privileges were violated, the undersigned finds that Plaintiff's claim is without merit.[2]

**(c)     No Right to Housing Assignment.**

"A federal prisoner has no constitutional right to be housed in the institution of his choice unless federal law or regulations create a liberty interest by imposing substantive limitations on prison officials' exercise of discretion in making prison transfers." Pardo v. FCI Petersburg, 19 F.3d 1429 (4th Cir. 1994)(unpublished)(citing Olim v. Wakinekona, 461 U.S. 238, 245-49, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983)); Also see Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct.

---

[2] The undersigned acknowledges that denial of recreation for a lengthy period of time can constitute cruel and unusual punishment in violation of the Eighth Amendment. See Rivera v. Mathena, 795 Fed.Appx. 169 (4th Cir. 2019)(finding that the combination and duration of shower and exercise deprivations were sufficiently lengthy and severe over the course of plaintiff's four years of segregation to provoke constitutional concerns). Plaintiff's allegation that he was allowed outside recreation only once from June

2532, 49 L.Ed.2d 451 (1976). No such limiting law or regulations exists. <u>Pardo</u>, 19 F.3d 1429, *

1. The classification and transfer of federal prisoners falls within the broad discretion of the

Bureau of Prisons and Courts lack authority to order that a prisoner be confined to any particular

institution. <u>See</u> 18 U.S.C. § 3621(b)(the BOP shall designate the place of an inmate's

confinement); <u>also see</u> McKune v. Lile, 536 U.S. 24, 40, 122 S.Ct. 2017, 153 L.Ed.2d 47

(2002)("It is well settled that the decision where to house inmates is at the core of prison

administrators'' expertise."); <u>Meachum</u>, 427 U.S. at 225, 96 S.Ct. at 2539(the transfer of a

convicted and sentenced inmate is within the sound discretion of the BOP); <u>United States v.</u>

<u>Williams</u>, 65 F.3d 301, 307 (2nd Cir. 1995)("A sentencing court has no authority to order that a

convicted defendant be confined in a particular facility, much less placed in a particular

treatment program; those decisions are within the sole discretion of the Bureau of Prisons.");

<u>Hinton v. Federal Bureau of Prisons</u>, 2009 WL 3347158, * 4 n. 5 (S.D.W.Va. Oct. 14, 2009)(J.

Johnston)("Inmates . . . have no constitutional right to be housed in any particular prison or jail,

regardless of security classification."). Accordingly, to the extent that Plaintiff is claiming his

liberty interest in a certain housing assignment was violated, the undersigned finds that

Plaintiff's claim is without merit.

 **(d)**      ***No taking of Plaintiff's funds.***

As stated above, the Due Process Clause of the Fifth Amendment protects inmates from

being deprived of their property without due process of law. <u>See</u> <u>Gaston</u>, 945 F.2d at 343. The

Court will "assume *arguendo* that inmates have a protected property interest in the funds in their

prison trust fund account, entitling them to due process with respect to any deprivation of these

funds." <u>Mooris v. Livingston</u>, 739 F.3d 740, 750 (5th Cir. 2014). In the instant case, however,

---

18, 2021 until July 29, 2021 is not sufficient to invoke a concern of an Eighth Amendment violation.

there is no allegation that Defendants actually took or deprived Plaintiff of his funds. (Document No. 3, pp. 10 - 11.) Plaintiff merely complains that prison officials will not allow him to transfer funds to his mother or father. (Id.) The foregoing allegations are insufficient to constitute a due process violation. Based on the foregoing, the undersigned finds that Plaintiff has failed to state a claim under the Fifth Amendment for which relief can be granted.

**5.    No Extension of Bivens:**

Finally, Plaintiff asserts that Defendants have violated his rights under the First Amendment. (Document No. 3, p. 14.) Specifically, Plaintiff alleges that Defendants have violated his First Amendment rights by the following: (1) Retaliating against Plaintiff for pursuing his administrative remedies; and (2) Restricting Plaintiff's access to the law library to only two visits from June 17, 2021, until July 25, 2021.[3] As stated above, a Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens, 403 U.S. at 395 -97, 91 S.Ct. at 1999. Bivens core premise

---

[3] The United States Supreme Court discussed the right of prisoners to access to the Courts in *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct.   2174, 135 L. Ed.2d 606 (1996). Making it perfectly clear that prisoners do not have a right *per se* to a law library or legal assistance, the *Lewis* Court explained and elaborated upon its earlier decision in *Bounds v. Smith*, 430 U.S. 817, 97 S. Ct. 1491, 52 L.Ed.2d 72 (1977). It is clear from the *Lewis* Court's decision that a Complaint alleging deprivation of the right to access to the Courts must include a statement indicating some palpable actual injury. *Lewis*, 518 U.S. at 343, 116 S.Ct. 2176. Conclusory allegations will not suffice. A Complaint alleging deprivation of the right of access to the Courts must contain specific allegations respecting an injury which was actually sustained by the inmate as a result of the policies and procedures in effect at the place of incarceration or the conduct of prison officials. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).

Plaintiff merely claims that Defendants restricted his access to the law library to two visits from June 17, 2021, until July 25, 2021. Plaintiff has failed, however, to state any facts or circumstances indicating or creating any basis for inferring that he has sustained actual injury as a consequence of the Defendants' alleged conduct. Plaintiff has not stated that he has been hindered or adversely impacted in any way in initiating Court proceedings or litigating a case. Assuming, therefore,  that all of the facts stated in Plaintiff's documents are true and construing them liberally, it is evident beyond doubt, especially in view of the lengthy documents Plaintiff has filed with this Court, that Plaintiff can prove no set of facts in support of his claim that he has been and is being deprived of access to the Courts which would entitle him to relief.

is to deter individual officers' unconstitutional acts. Correctional Services Corp v. Malesko, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)(declining to extend Bivens to confer a right of action for damages against private entities acting under the color of federal law). In Bivens, the Supreme Court first recognized that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court. Bivens, 403 U.S. at 396, 91 S.Ct. 1999. In the years following the decision in Bivens, the Supreme Court recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment, Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment, Carlson v. Green, 446 U.S. 14, 100, S.Ct. 1468, 64 L.Ed.2d 15 (1980). Since Carlson, the Supreme Court has consistently refused to extend Bivens liability to any new context or new category of defendants. See FDIC v. Meyer, 510 U.S. at 484-86, 114 S.Ct. 996 (declined to extend Bivens to permit suit against a federal agency); Holly v. Scott, 434 F.3d 287, 290 (4th Cir. 2006)(declining to extend Bivens to an Eighth Amendment claim against employees of a privately operated prison); Lebron v. Rumsfeld, 670 F.3d 540 (4th Cir. 2012)(declining to extend Bivens in a military context). In 2017, the Supreme Court made clear the very limited scope of Bivens actions and that "expanding the Bivens remedy is now a disfavored judicial activity." Ziglar v. Abbasi, ___ U.S. ___, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017). If the asserted Bivens claim is not one of the three Bivens-type actions previously recognized by the Supreme Court, closer scrutiny is required. Id.

In Abbasi, the Supreme Court set out a framework for determining whether a claim presents a "new Bivens context." Abbasi, 137 S.Ct. at 1860. As stated above, the Supreme Court

has recognized a <u>Bivens</u> remedy in only three cases: (1) A Fourth Amendment claim against federal agents for violating the prohibition against unlawful searches and seizures when they handcuffed a man in his home without a warrant; (2) A Fifth Amendment general discrimination claim against a congressman for firing his female administrative assistant; and (3) An Eighth Amendment claim brought by an inmate's estate against prison officials for failure to provide adequate medical care for his asthma. <u>Id.</u> at 1854-55(citations omitted). The <u>Abbasi</u> Court explained that "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." <u>Id.</u> at 1859. Although the <u>Abbasi</u> Court did not provide "an exhaustive list of differences that are meaningful enough to make a given context a new one," the Court did provide the following "instructive" examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

<u>Id.</u> at 1859-60. In the instant case, Plaintiff appears to allege that Defendants violated of his First Amendment rights by retaliating against him for requesting administrative remedies forms and informing Defendants that he was going to file a lawsuit. Plaintiff further complains that for approximately one month, Plaintiff's access to the law library was restricted to two visits. The mere fact that Plaintiff alleges a violation of a constitutional right does not conclusively establish that <u>Bivens</u> extends to Plaintiff's constitutional claim. Thus, the undersigned must first determine whether Plaintiff's First Amendment claims regarding retaliation and restriction of his access to the law library for limited time period presents "a new <u>Bivens</u> context."

The Supreme Court has "never held that *Bivens* extends to First Amendment claims." Reichle v. Howards, 566 U.S. 658, 132 S.Ct. 2088, n. 4, 182 L.Ed.2d 985 (2012)("We have never held that Bivens extends to First Amendment claims."); also see Correctional Services Corporation v. Malesko, 534 U.S. 61, 67-68, 22 S.Ct. 515, 519-20, 151 L.Ed.2d 456 (2001)(noting that "we declined to create a *Bivens* remedy against individual Government officials for a First Amendment violation arising in the context of federal employment"); Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)("we have not found an implied damages remedy under the Free Exercise Clause"); Leibelson v. Collins, 2017 WL 6614102, * 8 (S.D.W.Va. Dec. 27, 2017)(J. Berger)("[I]t is not clear that *Bivens* may be extended to First Amendment claims."). In Ashcroft v. Iqbal, the Supreme Court stressed that "we have declined to extend Bivens to a claim sounding in the First Amendment." Iqbal, 556 U.S. at 676, 129 S.Ct. at 1948. The Iqbal Court, however, noted that it assumed without deciding that respondent's First Amendment claim was actionable under Bivens because petitioners did not assert the above argument. Id.; also see Wood v. Moss, 572 U.S. 744, 134 S.Ct. 2056, 2067, 188 L.Ed.2d 1039 (2014)("[W]e have several times assumed without deciding that *Bivens* extends to First Amendment claims. We do so again in this case.") The undersigned further acknowledges that just prior to the Supreme Court's decision in Abbasi, the Fourth Circuit clarified that inmates have a clearly established First Amendment right to file prison grievances free from retaliation. See Martin v. Duffy, 858 F.3d 239 (4th Cir. June 1, 2017)("this Court held that an inmate's 'right to file a prison grievance free from retaliation' was clearly established under the First Amendment' at least as far back in time as 2010")(citing Booker v. South Carolina Department of Corrections, 855 F.3d 533, 545 (4th Cir. April 28, 2017)). Importantly, both Martin and

<u>Booker</u> were Section 1983 actions and the issue of whether <u>Bivens</u> extends to the First Amendment was not addressed by the Fourth Circuit. <u>Id.</u> Subsequently, the Fourth Circuit issued an unpublished opinion in <u>Patton v. Kimble</u> reversing a district court's dismissal of an inmate's <u>Bivens</u> action alleging a First Amendment retaliation claim. <u>Patton v. Kimble</u>, 717 Fed.Appx. 271 (4th Cir. 2018). The Fourth Court determined that the district court erred in finding that the inmate failed to state a First Amendment retaliation claim in light of its decision in <u>Booker</u>. <u>Id.</u> at 271-72. The Fourth Circuit, however, did not address the issue of whether <u>Bivens</u> extends to the First Amendment. <u>Id.</u> Recently, the Fourth Circuit considered the above issue and determined that an inmate's First Amendment retaliation claim presents a new <u>Bivens</u> context. <u>Earle v. Shreves</u>, 990 F.3d 774, 779 (4th Cir. 2021); .''); <u>also see</u> <u>Reichle v. Howards</u>, 566 U.S. 658, 663, n. 4, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012)("We have never held that *Bivens* extends to First Amendment claims"); <u>Dorsey v. United States</u>, 2020 WL 614240, * 2 (D.S.C. Feb. 10, 2020)(finding that Plaintiff's claim that his First, Sixth, and Fourteenth Amendments rights were violated when the prison staff improperly opened his legal mail outside his present does not support claims previously recognized under *Bivens*); <u>Scates v. Craddock</u>, 2019 WL 6462846, * 7 – 8 (N.D.W.Va. July 26, 2019)(finding that "Plaintiff's First Amendment claim arises in a new context for which the Supreme Court itself has not authorized *Bivens* liability"); <u>White v. Inch</u>, 2018 WL 6584899, * 1 (S.D.Ill. Dec. 14, 2018)(finding that it is "quite clear that the Supreme Court has not yet 'officially recognized' a First Amendment *Bivens* claim."); <u>Clemmons v. United States</u>, 2018 WL 4959093, * 2 (D.S.C. Oct. 15, 2018)("Congress and the courts have not expanded the *Bivens* remedy to include claims for denial of access to courts under the First Amendment."); <u>Kirtman v. Helbig</u>, 2018 WL 3611344, * 3 – 5(D.S.C. July 27, 2018)(examining

a *Bivens* First Amendment claim and finding no justification for extending *Bivens* to address a First Amendment retaliation claim); Clinton v. Brown, 2015 WL 4941799 (W.D.N.C. Aug. 19, 2015)(finding that Plaintiff's allegation of a violation of his First Amendment right was an unrecognized claim under *Bivens*); Heap v. Carter, 2015 WL 3999077 (E.D.Va. July 1, 2015)(no implied cause of action for damages under *Bivens* for alleged violations of the First Amendment). Based upon the foregoing, the undersigned finds that Plaintiff's First Amendment claims present a new Bivens context.

Next, the Court must determine whether Bivens should be extended to the above new context. First, the Court should consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new freestanding remedy in damages." Wilkie, 551 U.S. at 550, 127 S.Ct. 2588. "[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." Abbasi, 137 S.Ct. at 1865("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."); Malesko, 534 U.S. at 69, 122 S.Ct. at 515("So long as the plaintiff had an avenue for some redress," a court may decline to provide a new *Bivens* remedy). Alternative remedies can include administrative, statutory, equitable, and state law remedies. Based upon Plaintiff's above allegations that Defendants refused him administrative remedy forms, the Court will assume that the administrative remedy process does not constitute an alternative remedy in this case. The undersigned, however, finds that Plaintiff had other alternative remedies such as the following: (1) Filing a claim pursuant to 31 U.S.C. § 3723, which allows claims up to $1,000 to be presented to the agency for redress of damages caused by a federal officer's negligence; and (2)

Filing a tort claim under State law. See Minneci v. Pollard, 565 U.S. 118, 127-30, 132 S.Ct. 617, 181 L.Ed.2d. 606 (2012); Borowski v. Baird, 2018 WL 6583976, * 2 (S.D.Ill. Dec. 14, 2018), aff'd, 772 Fed.Appx. 338 (7th Cir. 2019); White v. Sloop, 2018 WL 6977336, * 3 (S.D.Ill. Aug. 31, 2018); also see Chilicky, 487 U.S. at 425-27, 108 S.Ct. 2460(As long as the plaintiff had an avenue for some redress, the bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability) Finally, if an inmate is being subjected to an ongoing constitutional violation, he could seek injunctive relief. See 18 U.S.C § 3626(a)(2); also see Malesko, 534 U.S. at 74, 122 S.Ct. at 523(stating that "unlike the *Bivens* remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means' for preventing entities from acting unconstitutionally"); Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946)(recognizing the "jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"). Thus, the undersigned finds that Plaintiff had alternative remedies available to address his allegations of a violation of his First Amendment rights. See Earle, supra, 990 F.3d at 781("[W]hile the absence of a *Bivens* remedy forecloses any claims for monetary compensation, there are nonetheless other avenues available to inmate that offer the possibility of meaning remedial relief for retaliatory discipline.")

Irrespective of whether an alternative remedy exists, a Bivens remedy should not be extended where "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" Abbasi, 137 S.Ct. at 1857(quoting Carlson, 446 U.S at 18, 100 S.Ct. 1468). Although the Supreme Court has not defined what constitutes "special factors counselling hesitation," the Court has observed that "[t]he necessary inference . . . is that the inquiry must

concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. at 1857-58. Put simply, "a factor must cause a court to hesitate before answering that question in the affirmative." Id. at 1858. "[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." Id. at 1865. The Abassi Court explained that since Congress did not provide for a standalone damages remedy against federal jailers when it passed the Prison Litigation Reform Act ["PLRA"], "[i]t could be argued that this suggest Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." Id. The Supreme Court explained as follows:

> Some 15 years after *Carlson* was decided, Congress passed the [PLRA] of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs.

Id. The PLRA's exhaustion requirement clearly applies to Bivens actions. Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The Supreme Court has further recognized that in enacting the PLRA, Congress intended to "reduce the quantity and improve the quality of prisoner suits." Jones v. Bock, 549 U.S. 199, 203-04, 127 S.Ct. 910, 1666 L.Ed.2d 798 (2007)(citing Porter v. Nussle, 534 U.S. at 524, 122 S.Ct. at 983). Additionally, the Supreme Court has stated that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." Turner v. Safely, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987)(citation omitted); also see Earle, supra, 990 F.3d at 781("[T]he recognition of a *Bivens* remedy in this case would work a significant intrusion into the area of prison management that demands quick response and flexibility, and it could expose prison officials to

an influx of manufactured claims.") The Supreme Court explained that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Turner, supra, 482 U.S. at 84, 107 S.Ct. at 2259. Since prison administration is a task that has been committed to the responsibility of the legislative and executive branches of government, the Supreme Court has stated that "separation of powers concerns counsel a policy of judicial restraint." Id., 482 U.S. at 85, 107 S.Ct. at 2259; also see Earle, supra, 990 F.3d at 781("Under these circumstances, we believe that Congress, not the Judiciary, is in the best position to 'weigh the costs and benefits of allowing a damage action to proceed."). Thus, the foregoing supports a finding that Congress has been active in creating legislation regarding prisoner litigation and such causes the undersigned hesitation as to expanding Bivens to Plaintiff's First Amendment claims regarding retaliation and the limited access to the law library. See Reid, 2018 WL 1588264 at * 3(finding Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new Bivens claim); Gehrke, 2018 WL 1334936 at * 4(same); Gonzalez, 269 F.Supp.3d at 61(same).

Furthermore, the Abbasi Court explained that "the decision to recognize a damage remedy requires an assessment of its impact on governmental operations systemwide." Abbasi, 137 U.S. at 1858. The impact on governmental operations systemwide include "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal systems are used to bring about the proper formulation and implementation of public policies." Id. The Supreme Court has emphasized that "'Congress is in a far better position than a court to evaluate

the impact of a new species of litigation' against those who act on the public's behalf." <u>Wilkie</u>,

551 U.S. at 562, 127 S.Ct. 2588(quoting <u>Bush</u>, 462 U.S at 389, 103 S.Ct. 2404). In <u>Abbasi</u>, the

Supreme Court further explained as follows:

> Claims against federal officials often create substantial costs, in the form of
> defense and indemnification. Congress, then, has a substantial responsibility to
> determine whether, and the extent to which, monetary and other liabilities should
> be imposed upon individual officers and employees of the Federal Government.
> In addition, the time and administrative costs attendant upon intrusions resulting
> from the discovery and trial process are significant factors to be considered.

<u>Abbasi</u>, 137 U.S. at 1856. The undersigned notes that expanding <u>Bivens</u> to allow a First

Amendment claims by inmates would clearly result in an increase of suits by inmates. This

increase in suits would result in increased litigation costs to the Government and impose a

burden upon individual employees to defend such claims. <u>See</u> <u>Cochran v. Morris</u>, 73 F.3d 1310,

1317 (4th Cir. 1996)(*en banc*)(citations omitted)(An inmate's claim of retaliation must be treated

with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory'

in the sense that it responds directly to prisoner misconduct."); <u>Gonzalez v. Bendet</u>, 2018 WL

1524752, * 4 (S.D.S.D. March 28, 2018)(finding "that the cost, time, and energy associated with

defending a *Bivens* action brought by an inmate for an action based on retaliation under the First

Amendment against a federal employee are significant" and constitute a special factor

counselling hesitation); <u>Andrews</u>, 2017 WL 7688266, * 4 – 5(same). As stated above, Congress

recognized the need of reducing costs related to frivolous lawsuits by prisoners when it enacted

the PLRA. Thus, the costs of defending such litigation against the need for damages as a remedy

to protect a prisoner's rights must be balanced if <u>Bivens</u> liability is extended to First Amendment

claims. This is exactly the type of activity that the Supreme Court determined in <u>Abbasi</u> is better

left to the legislative branch. Accordingly, the undersigned finds there are special factors

counselling hesitation as to the expansion of <u>Bivens</u> to Plaintiff's First Amendment claims. <u>See</u> <u>Earle</u>, <u>supra</u>, 990 F.3d at 780-81. Based upon the foregoing, the undersigned respectfully recommends that the District Court find that Plaintiff has failed to state a claim upon which relief cannot be granted concerning his First Amendment claims.

### <u>PROPOSAL AND RECOMMENDATION</u>

Based upon the foregoing, it is respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Plaintiff's Complaint as to the following: (1) All claims against FCI McDowell; (2) Claim of a denial of the right to participate in the BOP's administrative remedy process; (3) Claim of unconstitutional verbal threats and harassment in violation of the Eighth Amendment; (4) Claim of unconstitutional conditions of confinement in violation of the Eighth Amendment; (5) Claim of unconstitutional exposure to tobacco products in violation of the Eighth Amendment; (6) All claims concerning the alleged violation of the Due Process Clause of the Fifth Amendment; (7) All claims concerning the alleged violation of the First Amendment; and **REFER** this matter back to the undersigned for further proceedings on Plaintiff's claim of deliberate indifference regarding his medical care.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written

objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: November 19, 2021.

Omar J. Aboulhosn
United States Magistrate Judge